UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

October 24, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Tescha B. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-3282-BAH

Dear Counsel:

On December 20, 2022, Plaintiff Tescha B. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8), the parties' briefs (ECFs 12 and 17), and Plaintiff's reply (ECF 18). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case to the Commissioner for further consideration. This letter explains why.

I. **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on February 26, 2015, alleging a disability onset of December 31, 2009.[1] Tr. 302–05. Plaintiff's claim was denied initially and on reconsideration. Tr. 174–77, 181–82. On November 22, 2016, an Administrative Law Judge ("ALJ") held a hearing. Tr. 96–121. Following the hearing, on February 1, 2017, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 148–68. After Plaintiff requested review of the decision, the Appeals Council vacated the decision and remanded the case to an ALJ. Tr. 169–73.

A second ALJ held a second hearing on May 10, 2018. Tr. 39–90. That ALJ issued an unfavorable decision on Plaintiff's claim on July 25, 2018. Tr. 12–38. After the Appeals Council declined to review the decision, Tr. 1–6, Plaintiff appealed to this Court. Tr. 993–1000. On January 27, 2020, the Court remanded Plaintiff's case to the SSA. Tr. 1001–15. The Appeals Council then vacated the July 25, 2018 decision and remanded the case to the ALJ. Tr. 1018–22.

---

[1] Plaintiff later amended her alleged disability onset date to March 11, 2015. *See* Tr. 1351.

[2] 42 U.S.C. §§ 301 et seq.

*Tescha B. v. Kijakazi*
Civil No. 22-3282-BAH
October 24, 2023
Page 2

The ALJ held another hearing on November 10, 2020. Tr. 941–92. That ALJ issued an unfavorable decision on Plaintiff's claim on June 17, 2021. Tr. 908–40. Plaintiff appealed to this Court. *See Tescha B. v. Kijakazi*, No. BAH-21-2086, ECF 1 (D. Md. Aug. 17, 2021). On March 18, 2022, the Court granted a consent motion to remand Plaintiff's case to the SSA. *See Tescha B. v. Kijakazi*, No. BAH-21-2086, ECF 15 (D. Md. Mar. 18, 2022). The Appeals Council then vacated the June 17, 2021 decision and remanded the case to a different ALJ. Tr. 1539–45.

A third ALJ held a fourth hearing on July 21, 2022. Tr. 1492–1538. That ALJ issued a decision denying Plaintiff's claim on October 19, 2022. 1348–72. The October 19, 2022 decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see* 20 C.F.R. §§ 404.984(d), 422.210(a).

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her amended alleged onset date of March 11, 2015 through her date last insured of December 31, 2015." Tr. 1353. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "major depressive disorder, anxiety disorder, panic disorder, obsessive compulsive disorder (OCD), lumbar degenerative disc disease, scoliosis, obesity, and migraines." Tr. 1353–54. The ALJ did not discuss whether Plaintiff suffered from any non-severe impairments. *See id.* At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" through the date on which she was last insured. Tr. 1354. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except she could not climb ladders or scaffolds. She could occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance. She was limited to understanding and carrying out detailed, but not complex, instructions. She could use judgment to make simple work-related decisions. She could not perform work at a specific production-rate pace, as in an assembly line or where work requires hourly quotas. She could occasionally interact with supervisors and the public.

Tr. 1356. The ALJ found that Plaintiff could not perform past relevant work as a medical assistant (DOT[3] #079.362-010) or a warehouse worker (DOT #922.687-058) but could perform other jobs existing in significant numbers in the national economy. Tr. 1362. Thus, the ALJ concluded that Plaintiff was not disabled between March 11, 2015 and December 31, 2015. Tr. 1363.

### III. LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff raises two arguments on appeal. First, she argues that the ALJ erred by failing to support the RFC with a function-by-function assessment of her physical abilities. ECF 12, at 15–19. Second, Plaintiff contends that the ALJ erred by failing to evaluate her fibromyalgia "in accordance with" Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869 (July 25, 2012). *Id.* at 22. Specifically, Plaintiff avers that the ALJ "failed even to acknowledge Plaintiff's fibromyalgia, let alone determine whether [it] constituted a medically determinable, severe impairment." *Id.* at 20. Plaintiff contends that this error "materially infected the ALJ's RFC determination." *Id.* Defendant counters that: (1) the ALJ sufficiently explained the physical RFC in this case; and (2) the ALJ's step-two findings were supported by substantial evidence from the relevant period in this case. ECF 17, at 6–14.

The Court first addresses Plaintiff's argument that the ALJ's analysis failed to comport with SSR 12-2p, as it finds the argument dispositive. ECF 12, at 19–22. As Plaintiff correctly notes, the ALJ's decision contains no reference to fibromyalgia. *Id.* at 20; Tr. 1348–72. Plaintiff

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

avers that this omission constituted error because the record before the ALJ confirmed a diagnosis of "Fibromyalgia (M79.7)." ECF 12, at 19 (citing Tr. 1714, 1721, 1728, 1736, 1739). To support her argument, Plaintiff cites treatment notes from January, February, March, and April 2021 which: (1) document varying levels of fibromyalgia pain; (2) describe Plaintiff's fibromyalgia as "[s]table" at times and as "[w]orsening" at other times; and (3) discuss whether intervention or changes in medication are warranted due to Plaintiff's fibromyalgia. *Id.*; *see* Tr. 1714, 1721, 1728, 1736, 1739. Notably, a treating source discussed the effect of physical therapy, "tpi procedures," and medication on Plaintiff's "[c]hronic" fibromyalgia symptoms in April 2021. Tr. 1736.

The record also contains older references to fibromyalgia. In March 2018, a treating source evaluating Plaintiff's "left knee lumbar spine and issues related to fibromyalgia" noted that Plaintiff "has followed-up with pain management for a number of years and reports that she has significant pain which decreases function and worsens quality of life since 2009." Tr. 890. Also in 2018, a treating physician noted that Plaintiff's fibromyalgia has "most likely" lasted since 2009. Tr. 874. Moreover, Plaintiff indicated on an undated form that she takes Lyrica for her fibromyalgia, *see* Tr. 871, and the record confirms that Plaintiff was taking this medication as early as 2017. Tr. 903. In June 2017, Plaintiff informed her doctor that she was experiencing a fibromyalgia flare-up.[4] Tr. 868.

In light of the foregoing, it appears that the record repeatedly alludes to—but fails to actually document—a fibromyalgia diagnosis that may have occurred as early as 2009.[5] The absence of this diagnosis precludes the ALJ from evaluating fibromyalgia because, as SSR 12-2p makes clear, such a diagnosis is necessary for an ALJ to find that fibromyalgia is medically determinable. *See* SSR 12-2p, 2012 WL 3104869, at *2 (requiring that fibromyalgia be established through evidence, provided by a "licensed physician," which "document[s] that the physician reviewed the person's medical history and conducted a physical exam"); *id.* (explaining that the SSA will find that a person has medically determinable fibromyalgia "if the physician diagnosed [fibromyalgia] and provides the evidence we describe in section II.A. or section II. B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record.").

---

[4] Moreover, treatment records from October and November 2019 document Plaintiff's "chronic fibromyalgia pain symptoms," for which Plaintiff was "recommended physical therapy," as well as a prescription of cyclobenzaprine to treat "generalized myofascial (fibromyalgia) pain." Tr. 1631, 1634. In November 2019, Plaintiff's fibromyalgia was described as "[w]orsening" with a pain intensity of "9/10." Tr. 1634. A treatment note from April 2020 described Plaintiff's pain as "consistent with fibromyalgia." Tr. 1659. In March 2019, a treating source noted, under a heading entitled "Medical Diagnoses," that Plaintiff had a "history of fibromyalgia." Tr. 1277.

[5] To be sure, the record lacks clarity as to whether Plaintiff's 2018 reference to pain which has lasted since 2009 was, in fact, a reference to fibromyalgia pain. *See* Tr. 890. But, because the clarification of this ambiguity would materially affect the outcome of this case, the ALJ was required to discuss and resolve the issue. *See* SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) ("The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.").

*Tescha B. v. Kijakazi*
Civil No. 22-3282-BAH
October 24, 2023
Page 5

      Nonetheless, the Court agrees with Plaintiff that remand is warranted. SSR 12-2p further provides that "[i]n cases involving [fibromyalgia], as in any case, [the SSA] will make every reasonable effort to obtain all available, relevant evidence to ensure appropriate and thorough evaluation." *Id*. at *3. SSR 12-2p also provides that when the SSA has insufficient evidence to determine whether fibromyalgia is medically determinable, the SSA "may take one or more actions to try to resolve the insufficiency." *Id.* at *4 (explaining that such actions include, among other things, a request for additional records). Moreover, the Fourth Circuit has recognized that an ALJ has a duty to "explore all relevant facts and inquire into issues necessary for adequate development of the record and cannot rely on the evidence submitted . . . [that] is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). "[R]emand is necessary if the record has evidentiary gaps that result in unfairness or clear prejudice." *Lorenzo H. v. Saul*, No. GLS-18-1211, 2019 WL 3720255, at *2 (D. Md. Aug. 5, 2019) (citing *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 272 (D. Md. 2003)). Governed by these standards, the Court agrees with Plaintiff that the ALJ should have explored whether a fibromyalgia diagnosis existed but was omitted from the record in light of the record's multiple suggestions that Plaintiff's fibromyalgia existed at the time during which she was still insured.

      Defendant contends that remand for further evaluation of Plaintiff's fibromyalgia is unwarranted because Plaintiff's argument relies on records from 2021—six years after the date on which Plaintiff was last insured—to show the existence of a fibromyalgia diagnosis. ECF 17, at 12–13. But, as discussed above, the record actually contains fibromyalgia references dating from just *two years* after the date on which Plaintiff was last insured. *See* Tr. 868. The Fourth Circuit has recognized that "evidence created after a claimant's [date last insured, or "DLI"], which permits an inference of linkage between the claimant's post-DLI state of health and her pre-DLI condition, could be the 'most cogent proof' of a claimant's pre-DLI disability." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012) (noting that "retrospective consideration of evidence is appropriate when 'the record is not so persuasive as to rule out any linkage' of the final condition of the claimant with [their] earlier symptoms."). Additionally—and relevant to the instant case—at least one court has determined that medical records which were "within two years of the last insured date" were relevant to a claimant's condition during the relevant period and that remand was necessary for further evaluation of the records. *Blessing v. Colvin*, 951 F. Supp. 2d 367, 375-76 (N.D.N.Y. 2013).

      Here, the record contains a plethora of references to fibromyalgia, some of which: (1) are from just two years after the date on which Plaintiff was last insured and (2) allude to the existence of fibromyalgia at the time during which Plaintiff was still insured. *See* Tr. 868, 890, 1348–72. Importantly, none of these fibromyalgia references indicate or suggest that the impairment began *after* Plaintiff was insured. As such, these references "permit[] an inference" that, if Plaintiff was indeed diagnosed with fibromyalgia, the diagnosis was made during the period in which Plaintiff was insured. *Bird*, 69 F.3d at 341. Accordingly, the ALJ was required to consider this evidence. *See id*.; *see also Outour v. Saul*, No. 4:19-CV-04119-VLD, 2020 WL 1663358, at *16 (D.S.D. Apr. 3, 2020) ("[A]n ALJ should consider medical records which post-date the date last insured 'to determine if they reflect a continuation of disability, corroboration of an earlier diagnosis, or are otherwise probative to whether the claimant suffered a disability for any continuous period

*Tescha B. v. Kijakazi*
Civil No. 22-3282-BAH
October 24, 2023
Page 6

prior to the expiration of her insured status.'").

The ALJ's failure to assess the evidence which post-dated Plaintiff's date last insured was not without consequence. Had the ALJ done so, they may have ultimately determined that Plaintiff's fibromyalgia was a medically determinable impairment during the period at issue in this case, which, in turn, would have required the ALJ to consider the effects of fibromyalgia in assessing the RFC. *See Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) ("To make [an RFC] assessment, the ALJ must 'consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two.") (quoting 20 C.F.R. § 416.945(a)(2)) (brackets in original). Accordingly, remand is warranted.

Because the case is being remanded on other grounds, I need not address Plaintiff's argument regarding the RFC. On remand, the ALJ is welcome to consider this argument and make any required adjustments to the opinion.

## V.  CONCLUSION

For the reasons set forth herein, the SSA's judgment is REVERSED due to inadequate analysis pursuant to sentence four of 42 U.S.C. § 405(g). The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States District Judge